UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDER ROY SINCLAIR,<br><br>      Petitioner,<br><br>  v.<br><br>JOHN P. FAIRGRIEVE,<br><br>      Respondent. | CASE NO. 21-CV-05744-LK<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

This matter comes before the Court on United States Magistrate Judge Michelle L. Peterson's Report and Recommendation, Dkt. No. 13, and *pro se* Petitioner Alexander Roy Sinclair's Objections, Dkt. No. 14. Also before the Court are three motions filed by Mr. Sinclair requesting miscellaneous relief. *See* Dkt. Nos. 15–17. Having reviewed these documents and the remaining record, the Court adopts the Report and Recommendation and dismisses Mr. Sinclair's habeas petition without prejudice. The Court further denies Mr. Sinclair's remaining motions.

## I. BACKGROUND

Mr. Sinclair is currently incarcerated and awaiting trial on assault charges. Dkt. No. 13 at 1; *see* Dkt. No. 8-1 at 7–9; Dkt. No. 17-1 at 26–27, 72–75. Since August 2020, he has been shuttled

between the Western State Hospital and Clark County Jail for court-ordered competency evaluations and restoration treatments.[1] *See* Dkt. No. 17-1 at 11–18, 34–40, 108–114; *Trueblood v. Wash. State Dep't of Soc. & Health Serv.*, 822 F.3d 1037, 1040–41 (9th Cir. 2016) (discussing Washington's process for competency evaluations and restoration services). Judge Fairgrieve, who is presiding over Mr. Sinclair's state proceedings, ordered another evaluation in May 2022 and subsequently found Mr. Sinclair incompetent to stand trial. *See* Dkt. No. 17-1 at 56–62, 66. At issue in Mr. Sinclair's habeas petition is Judge Fairgrieve's August 2020 order authorizing jail staff to involuntarily administer antipsychotic drugs.[2] Dkt. No. 8-1 at 1–2. These types of authorizations are often referred to as "*Sell* orders." *See Sell v. United States*, 539 U.S. 166, 169 (2003) (the Government may administer antipsychotic drugs against a defendant's will to restore competency, but only under limited circumstances and upon satisfaction of certain conditions).

In the words of Judge Peterson, Mr. Sinclair's petition is "somewhat unclear." Dkt. No. 13 at 1. He appears to argue that the August 2020 *Sell* order violates due process because he was not present for the associated hearing.[3] Dkt. No. 8 at 2. He also challenges his forced medication as cruel and unusual punishment and suggests that the delay associated with his competency

---

[1] Some of these competency proceedings postdate Judge Peterson's Report and Recommendation.

[2] The record also contains a related September 2020 order authorizing the staff at Western State Hospital "to administer psychotropic medication to the Defendant, against his will, at the discretion of the attending psychiatrist in order to assist Defendant in regaining competency and to maintain the safety of the Defendant, other patients and inmates, and staff." Dkt. No. 17-1 at 127. This order is effective for "any subsequent interim period during which the Defendant is awaiting trial." *Id.* at 127–28. It further specifies that if competency is restored and Mr. Sinclair is returned to the Clark County Jail while he awaits trial, jail staff "is authorized to continue administering involuntary medication as directed and prescribed by Western State Hospital to maintain [his] competency." *Id.* at 128.

[3] The Superior Court found good cause for Mr. Sinclair to not appear in court on at least one occasion. *See* Dkt. No. 17-1 at 54. And Mr. Sinclair has a lengthy history of disruptive and disrespectful behavior. *See id.* at 93 (April 1, 2022 Superior Court minute entry indicating that Mr. Sinclair was found in contempt); *id.* at 90 (March 29, 2022 Superior Court minute entry indicating that Mr. Sinclair was found in contempt "due to inappropriate gestures on video"); *id.* at 46 (March 3, 2022 Superior Court minute entry indicating that Mr. Sinclair's video feed was terminated because he was being uncooperative and "presenting inappropriate gestures"); *id.* at 102 (March 31, 2020 Superior Court minute entry indicating that the court instructed the judicial assistant to mute Mr. Sinclair's conference line so that defense counsel could be heard).

ORDER ADOPTING REPORT AND RECOMMENDATION - 2

proceedings violated his speedy trial right. *Id.* Mr. Sinclair advances variations of these allegations elsewhere in his petition, but the theme remains the same throughout. All center on either Judge Fairgrieve's August 2020 *Sell* order or perceived defects in the process through which the State obtained authorization to involuntarily medicate Mr. Sinclair. *Id.* at 6–7; *see* Dkt. No. 13 at 1. For example, Mr. Sinclair contends that defense counsel was ineffective for failing to provide him with notice of the competency hearing. Dkt. No. 8 at 7. And he levels a passing accusation that the prosecutor and Judge Fairgrieve are "bias[ed] against African-Americans[.]" *Id.* at 6. In terms of relief, Mr. Sinclair asks the Court to collect and provide him with "[a]ll the information" from his state court proceedings thus far—including audio and video recordings of hearings—and dismiss all charges against him or, alternatively, reduce those charges to misdemeanors. *Id.* at 7; Dkt. No. 13 at 1–2.

Judge Peterson ordered Mr. Sinclair to show cause why his habeas petition should not be dismissed in accordance with the *Younger* abstention doctrine. Dkt. No. 9. Under that doctrine, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 407 U.S. 37, 43–44 (1971). She noted that Mr. Sinclair's speedy trial claim necessarily requires the Court to involve itself in ongoing state criminal proceedings which, under *Younger*, federal courts will not do absent extraordinary circumstances and where the danger of irreparable harm is both great and immediate. Dkt. No. 9 at 2 (citing *Carden v. Montana*, 626 F.2d 82, 83–84 (9th Cir. 1980)). To the extent Mr. Sinclair challenges the civil process by which the State obtained authorization to involuntarily medicate him, the manner in which the jail staff forcibly administers the medication, or any other conditions of confinement, Judge Peterson concluded that such claims are properly raised under 42 U.S.C. § 1983—not in a habeas petition. Dkt. No. 9 at 2–3; *see Muhammad v. Close*, 540 U.S. 749, 750

1  (2004) (per curiam) ("Challenges to the validity of any confinement or to particulars affecting its
2  duration are the province of habeas corpus; requests for relief turning on circumstances of
3  confinement may be presented in a § 1983 action." (internal citations omitted)); *Nettles v. Grounds*,
4  830 F.3d 922, 927 (9th Cir. 2016) (en banc) ("[W]e now adopt the correlative rule that a § 1983
5  action is the exclusive vehicle for claims brought by state prisoners that are not within the core of
6  habeas corpus."). And last, Judge Peterson observed that Mr. Sinclair currently has a section 1983
7  action pending, in which he asserts claims related to his involuntary medication. Dkt. No. 9 at 3
8  (citing *Sinclair v. Clark County*, No. 21-CV-05633-BJR (W.D. Wash. 2021)).[4]

Mr. Sinclair timely responded to the Order to Show Cause. Dkt. No. 10. But as Judge Peterson has aptly summarized, this filing essentially reiterates Mr. Sinclair's "claim that his speedy trial rights, along with his due process rights, have been violated by the State's failure to provide timely competency evaluation and restoration services." Dkt. No. 13 at 2. Mr. Sinclair otherwise dedicates much of his response to explaining why his competency proceedings are part of his criminal case. Dkt. No. 10 at 2–3. According to him, this distinction matters because the Washington Administrative Code prohibits county jails from administering involuntary medication in criminal cases. *Id.* at 3. None of these arguments carried the day. In her Report and Recommendation, Judge Peterson again explained that Mr. Sinclair's claims are not eligible for federal habeas review because they either trigger *Younger* abstention or fall outside the core of habeas. Dkt. No. 13 at 3. Mr. Sinclair filed timely objections. Dkt. No. 14.

---

[4] Mr. Sinclair filed two amended complaints in this related action to no avail. *See* Dkt. Nos. 9, 14–15. On March 31, 2022, Magistrate Judge David W. Christel issued his Report and Recommendation suggesting that the Court dismiss the action without prejudice for failing to state a claim upon which relief can be granted. Dkt. No. 19 at 2. Judge Christel further recommended that the case be considered a "strike" under 28 U.S.C. § 1915(g). *Id.*; *see also* Dkt. No. 17 (motion to appoint counsel); Dkt. No. 18 (order denying motion to appoint counsel). Mr. Sinclair filed timely objections to Judge Christel's Report and Recommendation. Dkt. No. 20. Judge Rothstein has not yet ruled on those objections.

ORDER ADOPTING REPORT AND RECOMMENDATION - 4

## II. DISCUSSION

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). As the statute and rule suggest, the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis original) ("Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct.").

### A. Mr. Sinclair's Objections

Mr. Sinclair's objections reiterate his speedy trial and competency related due process claims.[5] *See* Dkt. No. 14 at 2–5. He also reasserts several conclusory allegations about how his involuntary medication and the August 2020 *Sell* order are the product of a racist conspiracy involving defense counsel, the prosecutor, and Judge Fairgrieve. *Id.* at 4–5. Mr. Sinclair renews his request that the Court dismiss all charges or reduce them to misdemeanors. *Id.* at 6. He further asks the Court to implement a series of limitations on the jail's use-of-force and housing policies, and to institute additional safeguards for investigating alleged incidents of excessive force. *Id.* at 6–7. Mr. Sinclair's objections do not, however, address any of the concerns raised by Judge Peterson in her Report and Recommendation. The Court accordingly overrules them.

### B. Mr. Sinclair's Remaining Motions for Miscellaneous Relief

Mr. Sinclair has filed three other motions, all of which postdate his objections. *See* Dkt.

---

[5] Mr. Sinclair blames COVID-19, which he apparently contracted in early December 2021, for his deficient response to Judge Peterson's Order to Show Cause. Dkt. No. 14 at 1.

Nos. 15–17.

The first is related to the Court's December 30, 2021 Order Regarding 28 U.S.C. § 455(b)(2) and Canon 3(C)(1)(B) of the Code of Conduct for United States Judges. Dkt. No. 15 at 1; *see* Dkt. No. 12. Mr. Sinclair seeks to "enforce" this Order against the adjudicators in his state criminal case, who he alleges are conspiring against him. *See* Dkt. No. 15 at 1–4. He misunderstands the purpose of the Court's Order. The Court issued the Order following reassignment from Judge Pechman as a routine practice to ensure compliance with laws and rules that are relevant only to parties who are, or have been, represented by attorneys. Dkt. No. 15 at 1. Because Mr. Sinclair has not been represented by an attorney in this matter, the Order does not apply to him. And to the extent Mr. Sinclair's motion raises arguments related to his habeas claims, the Court construes those contentions as untimely objections and declines to consider them. *See Norling v. Uttecht*, No. C19-5697-BHS, 2020 WL 42418, at *1 (W.D. Wash. Jan. 3, 2020). This motion is denied.

Mr. Sinclair's second motion requests writing supplies and sets forth an amalgamation of facts and arguments related to the *Sell* hearing, his involuntary medication, and the alleged conspiracy against him. *See* Dkt. No. 16 at 2–18. The Court notes that Mr. Sinclair recently filed an identical motion in a related, since-closed case. *See Sinclair v. Clark Cnty. Courthouse*, No. 22-CV-05223-DGE, Dkt. No. 10 (W.D. Wash. 2022). The motion was denied there. *See id.*, Dkt. No. 11 at 2–3 ("The Court is uncertain as to why Plaintiff, who has thus far submitted his arguments to the Court utilizing paper and a writing implement, requires the intervention of the Court to obtain additional writing materials."). The Court agrees with this reasoning. And again, to the extent Mr. Sinclair's filing raises arguments related to his habeas claims, the Court treats those as untimely objections and will not consider them. *See Norling* 2020 WL 42418, at *1. This motion is denied.

Mr. Sinclair's third and final motion advances additional facts and arguments in support of his habeas claims. *See* Dkt. No. 17 at 1–30. He has also attached over 130 miscellaneous documents comprised of photographs, jail grievances, findings and orders from his competency proceedings, and minute entries from his state criminal case. *See* Dkt. No. 17-1. The Court construes these filings as untimely objections and declines to consider them. *See Norling* 2020 WL 42418, at *1. This motion is accordingly denied.

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) the Court ADOPTS Judge Peterson's Report and Recommendation, Dkt. No. 13;

(2) the Court DISMISSES without prejudice Mr. Sinclair's habeas petition, Dkt. No. 8; and

(3) the Court DENIES Mr. Sinclair's motions for miscellaneous relief. Dkt. Nos. 15–17.

The Clerk is directed to send uncertified copies of this Order to Mr. Sinclair at his last known address.

Dated this 22nd day of July, 2022.

Lauren King
United States District Judge